IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

NICHOLAS CHERNOBIEFF, JR.

    Petitioner,                                  No. CIV S-09-1033 MCE CHS P

    vs.

JAMES WALKER,

    Respondent.                   <u>FINDINGS AND RECOMMENDATIONS</u>

                                        /

## I.  INTRODUCTION

Petitioner Nicholas Chernobieff, a state prisoner, proceeds pro se with a petition for writ of habeas corpus brought pursuant to 28 U.S.C. § 2254.  Petitioner stands convicted of various felony offenses in the Placer County Superior Court, case number 62042340, for which he is currently serving an indeterminate life term in prison plus an additional consecutive determinate term of 12 years and 4 months.

## II.  BACKGROUND

This statements of facts was taken from the unpublished opinion of the California Court of Appeal, Third District, on direct review of petitioner's convictions.  Petitioner is the defendant referred to therein.  Since these factual findings have not been rebutted with clear and convincing evidence they are presumed correct.  28 U.S.C. § 2254(e)(1); *Taylor v. Maddox*, 336

1

F.3d 992, 1000 (9th Cir. 2004).

During the morning of March 11, 2004, Dustin Nunes, a manager at a Target Store in Roseville, observed three persons enter the store[:] defendant, a younger female named Ali Beebout, and Shane Patterson, a known "receipt shopper."[FN] On closed circuit television, Nunes tracked defendant and Beebout as they toured the store and placed items in a shopping cart. Concerned about detaining defendant because he had a prosthetic hook attached to his left arm, Nunes called the Roseville Police Department and spoke with Detective Scott Goucher. Detective Goucher, accompanied by Detective Michael Easter and Sergeant Michael Sherlock, all dressed in plainclothes, immediately left for Target in an unmarked van.

> FN. A "receipt shopper" finds receipts and then obtains items for these receipts inside the store and attempts to return them for a cash refund.

Seargent Sherlock stayed in the van while Detectives Easter and Goucher went inside and watched defendant and Beebout on the closed-circuit television. Beebout went to the return desk and presented a large red ball, showing the clerk what appeared to be a used receipt. Review of the tapes had shown Beebout had not entered the store with the ball. The detectives also learned that, according to a clerk at the fitting room, Beebout had entered the fitting room wearing a black bra and had left wearing an orange one.

Beebout met with defendant at the front of the store where they had a discussion. The two then exited the store, leaving merchandise in their shopping cart behind. Beebout sat down and began to smoke a cigarette while defendant proceeded to his car.

The plan was for Sherlock to block defendant's vehicle when he attempted to back out of his parking space; Goucher would assist Sherlock in detaining defendant; and Easter would detain Beebout. When Sherlock saw defendant get into his car, a Saturn, and start it, he began driving to block defendant's car. However, another vehicle pulled out of its parking place, thereby preventing Sherlock from blocking defendant.

Sherlock radioed the other officers to detain defendant when his car got to the front of the store. As defendant stopped briefly in front of Target, Goucher, who was wearing tan pants and a light blue shirt, pulled out his badge which was hanging from a chain under his shirt and lifted his shirt to show his "duty gear," which included his holstered gun.

Defendant's window was down and Goucher held out his badge and said, "police officer. Turn your car off." Defendant revved the

engine and Goucher saw him attempting to move the shifting lever. Goucher again identified himself and ordered defendant to turn off his car. The Saturn "peeled" out as Goucher unsuccessfully tried to grab the driver's door.

Detective Easter, who estimated he was about 50 yards from where Goucher had attempted to detain defendant, heard the squealing of tires and Goucher yell, "police, stop the vehicle." Easter quickly moved into the street from the sidewalk, taking out his badge and gun, expecting defendant to see him and stop. Easter continued to move to his left to get out of the way, but defendant swerved toward him and struck him, causing him to flip over the car and land on the pavement. Defendant did not stop, but continued onto a street and drove off.

Goucher observed the Saturn swerve and hit Easter. Goucher fired six shots at the Saturn as it drove off at a high rate of speed.

Sergeant Sherlock, who was driving behind defendant, described the Saturn's trajectory toward Detective Easter as more of a "drift" than a swerve.

Richard Withrow, a Target employee, was about five feet from Detective Goucher when he heard Goucher tell defendant to turn off his engine and get out of the car. Withrow saw Goucher's badge around his neck and knew Goucher was a police officer. Withrow observed the Saturn accelerate away from Goucher, swerve and strike Detective Easter. However, Withrow thought the Saturn swerved to avoid an SUV which was turning into the lot.

Store surveillance cameras captured the Saturn's acceleration away from Goucher and its striking Detective Easter.

Easter was transported to a hospital for injuries to his arms, legs and ankle. Although released that same day, he was off duty for a week and one-half, was on modified duty for another eight weeks, and suffered torn cartilage in his knee which had to be surgically removed.

The Saturn was found about an hour later, abandoned in a driveway. Handcuffs belonging to Easter were wrapped around the car's antenna. A search of the Saturn's trunk disclosed baggies containing methamphetamine as well as paraphernalia indicating drug trafficking.

Sergeant Michael Allison, an expert in accident reconstruction, determined from the surveillance video and his test driving the Saturn at Target, that defendant was traveling about 29 miles per hour when he struck Easter, who was 81 feet from where Goucher had attempted to detain defendant. Allison opined that if the striking of Easter had been an accident there would have been skid

3

marks following the impact, but there were none. Allison concluded that because of the camera angles and the poor quality of the video any swerving of the Saturn could not be accurately determined. Allison calculated that there was 15 feet between the SUV and Detective Easter when defendant struck Easter, thus giving defendant adequate room to pass without hitting Easter.

Detective Gary Hallenbeck, who was with the Yolo County Sheriff's Department, testified that on February 26, 2003, he and several other officers served a search warrant for defendant's residence. Hallenbeck, dressed as a telephone repairman, spoke with defendant at the front door and attempted to lure him outside. When the ruse failed, Hallenbeck signaled for other officers, who were in uniform and hiding in a van, to approach the house. Defendant saw the officers and unsuccessfully tried to slam the door. A struggle ensued until defendant was handcuffed.

A search of the residence disclosed about 16 grams of methamphetamine in several bags; about 76 grams of marijuana; a digital sale, a cutting agent, and a loaded .380 semiautomatic handgun.

It was stipulated that on March 11, 2004, defendant had charges pending in Yolo County for possession of both methamphetamine and marijuana for sale and for maintaining a place for the use or sale of controlled substances and that he had been released on his own recognizance in that case on September 19, 2003.

Defendant called eight witnesses who were in the area when Detective Goucher attempted to detain defendant. None of these witnesses heard Goucher yell "police officer."

Gregg Stutchman, an expert in forensic photography, determined from the Target store videos that the Saturn turned just slightly away from the SUV prior to striking Detective Easter. Scott MacDonald, an automobile accident investigation expert, concluded from his measurements, which he claimed were accurate within a range of two feet, that Detective Easter had moved into a position which made his collision with the Saturn unavoidable.

*People v. Chernobieff*, No. L2967199, slip op. at 1 -3 (Cal.App. 3 Dist., 2007).

Petitioner was convicted by jury of seven felony offenses:

Count I: Willful, deliberate, and premeditated attempted murder of a peace officer, while knowing the officer was in the performance of his duties (*see* Cal. Penal Code §§ 187(a), 664);

Count II: Assault on a peace officer (*see* Cal. Penal Code § 245(c)), as well as the lesser included offense of assault (*see* Cal. Penal Code § 245(a)(1));

Count III: Conspiracy to commit grand theft (*see* Cal. Penal Code §§ 182(a)(1), 487);

Count IV: Possession of a check with intent to defraud (*see* Cal. Penal Code § 475(b));

Count V: Second degree burglary (*see* Cal. Penal Code § 459);

Count VI: Possession of methamphetamine for sale (*see* Cal. Health and Safety Code § 11378); and

Count VII: Transportation of methamphetamine (*see* Cal. Health and Safety Code § 11379(a)).

As to Counts I and II, the jury found true that petitioner inflicted great bodily injury on Officer Easter (*see* Cal. Penal Code § 12022.7(a)).  The jury further found true that petitioner committed the offenses in question while on bail (*see* Cal. Penal Code § 12022.1); that he served a prior prison term (*see* Cal. Penal Code § 667.5(b)); and that he had three prior controlled substance convictions (*see* Cal. Health and Safety Code § 11370.2(c)).

For the attempted murder, an indeterminate life term was imposed, in addition to a consecutive determinate term of 12 years 4 months for the remaining offenses and enhancements.

On direct review, the California Court of Appeal, Third District, affirmed the judgment and sentence, except to reverse conviction on the lesser included offense in Count II. *People v. Chernobieff*, *supra*, slip op. at 1.  A petition for review to the California Supreme Court was denied.  Petitioner filed four state habeas corpus petitions which were also denied.  The parties agree that petitioner exhausted state court remedies with respect to the claims presented.

### III.  CLAIMS

The pending federal petition presents three grounds for relief.  Each will be separately set forth and discussed herein.  Petitioner claims:

Ground One: Exclusion of the defense's proposed expert testimony and cross-examination violated petitioner's right to due process and a fair trial under the Sixth and Fourteenth Amendments to the United Sates Constitution.

5

Ground Two: Admission of Hallenbeck's testimony regarding details of [petitioner's] arrest in the pending Yolo County case was barred by Evidence Code sections 352 and 1101 and by constitutional rights to due process and a fair trial. Alternatively, if defense counsel's objections were not sufficiently specific, then counsel's assistance was ineffective.

Ground Three: The cumulative effect of various trial court errors deprived petitioner of a fair trial.

## IV.  APPLICABLE LAW FOR FEDERAL HABEAS CORPUS

An application for writ of habeas corpus by a person in custody under judgment of a state court can be granted only for violations of the Constitution or laws of the United States. 28 U.S.C. §2254(a); *see also Peltier v. Wright*, 15 F.3d 860, 861 (9th Cir. 1993); *Middleton v. Cupp*, 768 F.2d 1083, 1085 (9th Cir. 1985) (*citing Engle v. Isaac*, 456 U.S. 107, 119 (1982)). This petition for writ of habeas corpus was filed after the effective date of, and thus is subject to, the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). *Lindh v. Murphy*, 521 U.S. 320, 326 (1997); *see also Weaver v. Thompson*, 197 F.3d 359 (9th Cir. 1999). Under AEDPA, federal habeas corpus relief also is not available for any claim decided on the merits in state court proceedings unless the state court's adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); *see also Penry v. Johnson*, 532 U.S. 782, 792-93 (2001); *Williams v. Taylor*, 529 U.S. 362, 402-03 (2000); *Lockhart v. Terhune*, 250 F.3d 1223, 1229 (9th Cir. 2001).

## V.  DISCUSSION

### A.  Evidentiary Exclusions

At issue are three areas of evidence excluded by the trial court following the prosecution's pre-trial motion in limine. The trial court excluded: (1) expert testimony about proper law enforcement procedures; (2) cross-examination of Officer Goucher on his use of

lethal force; and (3) evidence of traffic studies on the mortality rates of auto/pedestrian collisions.

At a pre-trial hearing on the motion, defense counsel indicated "the heart of the defense's case" was the failure of Officers Goucher, Easter, and Sherlock to follow proper law enforcement procedure. Defense counsel offered the expert testimony of Fred Saunders, a law enforcement procedure expert for over 15 years, that the officers violated "a number of policies of the Roseville Police Department regarding the use of force." Specifically, it was Saunders' opinion that the officers failed to explore means of detaining petitioner aside from using equal force, failed to follow a chain of command, failed to communicate effectively, and failed to follow reasonable means of detaining petitioner. According to counsel, the defense theory of the case was that the officers' violation of policies caused defendant to be in fear of his life at the time he fled on the day in question: "It goes directly to [the] defense, which is self-defense." (Reporter's Transcript (hereinafter "RT") at 176-177.)

The prosecutor objected that Saunders's proffered testimony was irrelevant, and Saunders's testimony was excluded for lack of relevancy.

The trial court further barred the defense from cross-examining Officer Goucher regarding his decision to employ lethal force (by firing several rounds from his service weapon) in an attempt to halt petitioner's flight from the scene. Although not clear from the transcript of the hearing on the motion in limine, according to the clerk's trial minutes, this portion of the motion was granted by stipulation.[1]  (*See* RT at 199-203; Clerk's Transcript (hereinafter "CT") at 564.)

Finally, the trial court excluded the defense's proposed expert testimony concerning traffic studies showing that a vehicle traveling at 28 to 30 miles per hour (the range of speed at which petitioner struck Officer Easter) is not likely to kill a person. Through this

---

[1] The trial court agreed, however, that the defense could cross-examine Officer Goucher on his decision to use lethal force solely for impeachment purposes if Groucher opened the door to such inquiry. (RT at 200.)

7

evidence, the defense sought to show that petitioner lacked the requisite intent. The defense did not suggest, however, that petitioner had any knowledge of the studies. Accordingly, the trial court ruled that the evidence was irrelevant because "expert testimony or statistical testimony is not going to enlighten us as to [his] intent." (RT at 233-35.)

Whether rooted directly in the Due Process Clause of the Fourteenth Amendment, or in the Compulsory Process or Confrontation Clause of the Sixth Amendment, the Constitution guarantees criminal defendants a meaningful opportunity to present a defense and to present relevant evidence in their own defense. *Crane v. Kentucky*, 476 U.S. 683, 690 (1986) (quoting *California v. Trombetta*, 467 U.S. 479, 485 (1984); *Chambers v. Mississippi*, 410 U.S. 284, 294 (1973). This right is not unlimited, but rather, is subject to reasonable restrictions. *United States v. Scheffer*, 523 U.S. 303, 308 (1998).

A state evidentiary rule excluding evidence does not abridge a criminal defendant's right to present a defense unless it is "arbitrary or disproportionate" and "infringe[s] upon a weighty interest of the accused." *Scheffer*, 523 U.S. at 308; *Crane*, 476 U.S. at 689-91 (discussing the tension between the discretion of state courts to exclude evidence at trial and the federal constitutional right to "present a complete defense"). The Supreme Court has found a violation of the right to present a complete defense in cases where a state evidentiary rule, on its face, "significantly undermined fundamental elements of the defendant's defense," but did little or nothing to promote a legitimate state interest. *Scheffer*, 523 U.S. at 315; *see also Holmes v. South Carolina*, 547 U.S. 319, 324 (2006).

As to petitioner's three-pronged evidentiary claim, the California Court of Appeal held, in the last reasoned state court decision:

[A]

> "No evidence is admissible except relevant evidence." (Evid. Code, § 350.) " 'Relevant evidence' means evidence, including evidence relevant to the credibility of a witness or hearsay declarant, having any tendency in reason to prove or disprove any disputed fact that is of consequence to the determination of the

8

action." (Evid. Code, § 210.)

Here, at issue was (1) whether the conduct of the officers reasonably caused defendant to believe he was confronted by persons other than police officers and in fleeing for his safety whether he unintentionally hit Easter, or (2) whether he fled because he knew that police officers were trying to take him into custody and when confronted by Easter, he struck Easter with the intent to kill him.[FN]

> FN. The jury was instructed on self-defense against assault (CALJIC No. 5.30); assailed person's right not to retreat (CALJIC No. 5.50); when actual danger not necessary to justify self-defense (CALJIC No. 5.51); right of self-defense continues until danger appears to cease (CALJIC No. 5.52); defense of necessity (CALJIC No. 4.43); and negation of crime due to commission of act by misfortune or accident (CALJIC No. 4.45).

Whether the officers acted in accordance with the policy of the Roseville Police Department in attempting to detain defendant or whether the officers could have used different and less dangerous means to detain him has no bearing in resolving the above issues. Resolution of these questions could only be resolved by the jury based upon the actual conduct of the officers and the reasonableness of defendant's response, and not to what might have happened had the officers employed a different method. Consequently, the court properly determined that Saunders's proffered testimony was irrelevant.

Defendant also argues that because the officers knew that defendant was involved in drug trafficking, they should have known that he would be more likely to think that a non-uniformed officer with a gun who was trying to stop him was someone pulling a "drug rip-off," hence the officers should have taken greater precautions in approaching him. This is no more than a variation of defendant's previous argument, namely, that the officers should have used other means to detain him. For the same reasons stated above [ ], the jury's proper concern was with what the officers actually did, not what they might have done. Consequently, the argument lacks merit.

B

Defendant contends the court erred when it refused to permit him to cross-examine Detective Goucher regarding his use of lethal force. According to defendant, such cross-examination "would have been expected to lead naturally and probably to consideration of the department's lethal force policy and to the officers' prior knowledge of [defendant's] drug trafficking history. This would have been another way of bringing to the jury's attention-or at least

9

> raise an issue-the information an expert might relate concerning reasonable and expected reactions by a drug trafficker to an armed and hostile approach by not-uniformed persons."
>
> Again, the officers' knowledge of defendant being a drug trafficker was irrelevant to either the reasonableness of defendant's response to the officer's conduct or to defendant's state of mind (intent) when he struck Detective Easter. Consequently, the court did not err in refusing to permit defendant to elicit such material by cross-examination.
>
> C
>
> Defendant contends the trial court erred when it ruled irrelevant his proffered expert testimony regarding traffic studies which disclosed that collisions between vehicles traveling at 28 to 30 miles per hour, the range of speed at which defendant struck Easter, and pedestrians were unlikely to result in death. The court found the proffered evidence irrelevant and granted the People's request to exclude it. The People urge that the issue is forfeited because defense counsel stipulated to the court granting the request. The People misread the record, and defendant's contention lacks merit. [¶] ...Consequently, we review the issue.
>
> There was no proffer of evidence that defendant was aware of the statistical fact suggested by the studies, which might have made the evidence marginally relevant. Most importantly, however, is that even if there was not a high probability of death from such collisions, such lessened probability of death would have no bearing on whether defendant was trying to kill the detective when he ran into him. Hence, the sustaining of the objection was proper.

*People v. Chernobieff*, *supra*, slip op. at 9-12.

Petitioner fails to demonstrate that the decision of the California Court of Appeal was contrary to, or an unreasonable application of, clearly established Supreme Court precedent, or that it was based on an unreasonable determination of facts. It appears that the Supreme Court's inquiry in this area has been limited to whether an evidentiary rule, by its own terms, violates a defendant's constitutional rights. *See Moses v. Payne*, 555 F.3d 742, 758 (9th Cir. 2009). Here, the proffered expert testimonies and cross-examination were excluded under section 350 of the California Evidence code, a well-established state rule that requires evidence to be relevant in order to be admissible.

/////

No federal precedent requires that irrelevant evidence be admitted. Rather, as already set forth, state courts have "wide latitude" to exclude evidence that is "marginally relevant." *Crane*, 476 U.S. at 689-90; *see also Wood v. Alaska*, 957 F.2d 1544, 1549 (9th Cir. 1992) ("A defendant has no right [ ] to present irrelevant evidence."); *Perry v. Rushen*, 713 F.2d 1447, 1453 (9th Cir. 1983) ("Evidence of little importance, whether merely cumulative or of little probative value, will almost never outweigh the state interest in efficient judicial process.").

Because petitioner cannot successfully argue that the terms of the state evidentiary rule infringed upon his constitutional rights, his argument is better interpreted as "challenging the trial court's exercise of discretion in this case to exclude [the proffered] testimony." *Moses*, 555 F.3d at 758. But, as the Ninth Circuit has observed:

> [T]he Supreme Court's cases... do not squarely address whether a court's exercise of discretion to exclude expert testimony violates a criminal defendant's constitutional right to present relevant evidence. *See Van Patten,* 128 S.Ct. at 746. Nor do they clearly establish "a controlling legal standard" for evaluating discretionary decisions to exclude the kind of evidence at issue here. *See Panetti,* 127 S.Ct. at 2858. Therefore, the state appellate court's determination that the trial court's exercise of discretion to exclude expert testimony under Rule 702 did not violate Moses's constitutional rights cannot be contrary to or an unreasonable application of clearly established Supreme Court precedent. *See Van Patten,* 128 S.Ct. at 746-47; *Panetti,* 127 S.Ct. at 2858; *Musladin,* 549 U.S. at 76, 127 S.Ct. 649; *cf. Patrick,* 508 F.3d at 1260.

*Moses*, 555 F.3d at 758-59.

Here, like the situation in *Moses*, there is no Supreme Court precedent that clearly establishes a controlling legal standard for evaluating the trial court's exercise of discretion in finding the proffered defense evidence irrelevant. In this regard, petitioner is unable to demonstrate the state appellate court's decision upholding the trial court's evidentiary ruling to be contrary to or an unreasonable application of clearly established federal law as determined by the Supreme Court.

/////

Moreover, it is clear that the exclusion of evidence did not result in a fundamental violation of petitioner's right to present a defense. Petitioner was free to advance his self-defense theory of the case through other witness testimony and evidence. For example, although the trial court granted the prosecution's motion to exclude Saunders's testimony on police procedure, evidence of the officer's actual conduct and the video tape of the incident in question remained "fair game" for examination." (RT at 189.) Notably, the defense presented the testimony of eight eyewitnesses, each of whom testified that they did not hear officers identify themselves as law enforcement. As the state appellate court observed, the jury was adequately instructed on possible defenses to the charges of assault and attempted murder, including self-defense and negation of crime due to commission of act by misfortune or accident, among others. (CT at 680-85.) Petitioner had a meaningful opportunity to present his case, and no relief is available for his claim that the trial court's evidentiary exclusions violated his right to due process and a fair trial. *Cf. Conde v. Henry*, 198 F.3d 734, 741 (9th Cir. 1999) (trial court violated petitioner's right to due process where it improperly precluded defendant's attorney from making closing argument explaining the defendant's theory of the case, refused to instruct the jury on the defendant's theory and, over the defendant's objection, gave erroneous instructions that did not require that the jury find every element of the offense).

        B.       Admission of Hallenbeck's Testimony

At trial, the prosecution called Detective Hallenbeck from the Yolo County's Sherriff's Department Narcotic Enforcement team; Hallenbeck testified as an expert on the issue of possession for sale of methamphetamine. (RT at 738-66.) Hallenbeck testified about a search warrant that he and some other officers executed at petitioner's residence on February 26, 2003. During the search, officers recovered, among other things, a large bag of methamphetamine, small bags of methamphetamine, marijuana, a digital scale, and a semiautomatic handgun. Hallenbeck opined that the methamphetamine was possessed for purpose of sale. Hallenbeck further testified that petitioner engaged in a brief "struggle" with officers before he was

handcuffed. On cross-examination, Hallenbeck clarified that petitioner did not physically resist the officers, because if he had, he would have been charged with resisting arrest.

The relevance of this evidence, according to the prosecution, was to show motive: petitioner formed the intent to run over Detective Easter to evade arrest and remain out of custody. Defense counsel's objection, that the probative value was weak (in part because that arrest had occurred more than a year prior) and the prejudice significant, was overruled. (RT at 222-23.)

As to petitioner's claim that Hallenbeck's testimony was improperly admitted, the California Court of Appeal held:

> Defendant argues that "Hallenbeck's detailed recitation of the Yolo County arrest, [his] resistance, and the presence of a loaded handgun were not relevant to prove appellate had a motive or intent to kill Easter or to sell drugs." In these circumstances, we review the trial court's ruling under the abuse of discretion standard. (*People v. Ewoldt* (1994) 7 Cal.4th 380, 402.)
>
> Evidence Code section 1101 prohibits the admission of other crimes' evidence to show a defendant's bad character or propensity to commit bad acts except when relevant to prove other facts like motive or intent. (Evid.Code, § 1101, subds.(a) & (b).) With regard to intent, "The least degree of similarity (between the uncharged act and the charged offense) is required in order to prove intent. [Citation.] '[T]he recurrence of a similar result ... tends (increasingly with each instance) to negative accident or inadvertence or self-defense or good faith or other innocent mental state, and tends to establish (provisionally, at least, though not certainly) the presence of the normal, i.e., criminal intent accompanying such an act....' [Citation.] In order to be admissible to prove intent, the uncharged misconduct must be sufficiently similar to support the inference that the defendant '"probably harbor[ed] the same intent in each instance."' (*People v. Ewoldt* (1994) 7 Cal.4th 380, 402.
>
> ***Intent***
>
> Here, the similarities for the uncharged and charged offenses were defendant's possession of several baggies containing methamphetamine, additional packing material for methamphetamine, razor blades, and scales which could be used for weighing the methamphetamine. These similarities are sufficient to show that if defendant harbored and intent to sell in

the Yolo County case, he likely harbored the same intent in the present case. Consequently, the court did not abuse its discretion in admitting the uncharged evidence on defendant's present intent in possessing methamphetamine.

As to the admission of the evidence of the firearm, in order for the Yolo County offense to be admissible in the present case, the People had to prove defendant possessed the methamphetamine in the Yolo County case with intent to sell it. The presence of the gun was one of the factors relied on in Hallenbeck's opinion that defendant's possession was for the purpose of sale. Thus, it was admissible for that purpose.

### *Motive*

Defendant's pending drug charges in Yolo County and his struggle with the officers regarding his arrest for those charges, was admitted on the issue of motive.

"Evidence that a defendant committed crimes other than those for which he is on trial is admissible when it is logically, naturally, and by reasonable inference relevant to prove some fact at issue, such as motive.... [¶] ... [¶] As long as there is a direct relationship between the prior offense and an element of the charged offense, introduction of that evidence is proper." (*People v. Daniels* (1991) 52 Cal.3d 815, 856-857.)

In ruling that the challenged evidence was admissible to show defendant's motive in fleeing, the court observed there were two theories: One, that defendant was trying to avoid a carjacking, and his striking of Detective Easter was the result of his fleeing or was an accident. The second theory was that defendant was trying to evade arrest and was willing to utilize deadly force in order to accomplish that end.

Evidence of the pending Yolo County charges tended to show that defendant had reason to avoid being arrested in the present case, namely, because in addition to the new charges defendant would incur he would also have his bail revoked on the Yolo County charges. That defendant struggled with the officers at his residence tended to show that he was willing to engage in physical violence in order to avoid being taken into custody. Since the evidence was material on the issue of defendant's motive in fleeing and in striking Easter, there was no abuse of discretion in admitting it.

*People v. Chernobieff*, *supra*, slip op. at 13-16 (brackets in original).

        First, to the extent petitioner contends that admission of Hallenbeck's testimony was barred by sections 352 and 1101 of the California Evidence Code, the claim fails because

14

habeas corpus will not lie to correct errors in the interpretation or application of state law. *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *Johnson v. Sublett*, 63 F.3d 926, 930 (9th Cir. 1995) ("The admission of evidence does not provide a basis for habeas relief unless it rendered the trial fundamentally unfair in violation of due process.") (citing *Estelle*, 502 U.S. at 67-68).

Second, the state appellate court's rejection of this claim was not contrary to, or an unreasonable application of clearly established federal law as determined by the Supreme Court. As with petitioner's exclusion of evidence claim in ground one (see subsection A, *supra*), this claim fails for lack of controlling Supreme Court precedent.

Petitioner cites *Terrovona v. Kincheloe*, 852 F.2d 424, 428-29 (9th Cir. 1988) for the rule that prior bad act testimony can violate due process if arbitrary and fundamentally unfair to the defense. Whether propensity evidence serving only to demonstrate bad or violent character violates due process, however, appears to be an open question in the Supreme Court's jurisprudence. *See Estelle*, 502 U.S. at 75 n.5 ("we express no opinion on whether a state law would violate the Due Process Clause if it permitted the use of 'prior crimes' evidence to show propensity to commit a charged crime."); *Alberni v. McDaniel*, 458 F.3d 860, 866-67 (9th Cir. 2006) (noting that the Supreme Court has denied certiorari at least four times on the propensity evidence issue reserved in *Estelle*). Since "[t]he right [petitioner] asserts has not been clearly established by the Supreme Court, as required by AEDPA[,]" the claim should be denied. *Alberni*, 458 F.3d at 867.

In *Holley v. Yarborough*, 568 F.3d 1091, 1101 (9th Cir. 2009), the Ninth Circuit denied federal habeas corpus relief on a similar claim for precisely this reason, holding:

> Under AEDPA, even clearly erroneous admissions of evidence that render a trial fundamentally unfair may not permit the grant of federal habeas corpus relief if not forbidden by "clearly established Federal law," as laid out by the Supreme Court. 28 U.S.C. § 2254(d). In cases where the Supreme Court has not adequately addressed a claim, this court cannot use its own precedent to find a state court ruling unreasonable. *Musladin,* 549 U.S. at 77, 127 S.Ct. 649.

15

> The Supreme Court has made very few rulings regarding the admission of evidence as a violation of due process. Although the Court has been clear that a writ should be issued when constitutional errors have rendered the trial fundamentally unfair, *see Williams,* 529 U.S. at 375, 120 S.Ct. 1495, it has not yet made a clear ruling that admission of irrelevant or overtly prejudicial evidence constitutes a due process violation sufficient to warrant issuance of the writ. Absent such "clearly established Federal law," we cannot conclude that the state court's ruling was an "unreasonable application." *Musladin,* 549 U.S. at 77, 127 S.Ct. 649. Under the strict standards of AEDPA, we are therefore without power to issue the writ on the basis of Holley's [erroneous admission of evidence] claims.

*Holley*, 568 F.3d at 1101.

In any event, petitioner's claim would fail even under Ninth Circuit precedent. Under Ninth Circuit precedent, an evidentiary ruling renders a trial so "fundamentally unfair" as to violate due process only if "there are *no* permissible inferences the jury may draw from the evidence." *Windham v. Merkle*, 163 F.3d 1092, 1103 (9th Cir. 1998) (emphasis in original) (quoting *Jammal v. Van de Kamp*, 926 F.2d 918, 920 (9th Cir. 1991)). In this case, Hallenbeck's testimony was admitted for the purpose of proving intent in count VI (possession of methamphetamine for sale) and motive in counts I (attempted murder) and II (assault). From the challenged evidence, a reasonable jury could have drawn permissible inferences that petitioner planned to sell the methamphetamine in his possession, and that he intended to evade arrest by Officer Easter. Admission of Hallenbeck's testimony, therefore, was not unconstitutional. *See generally*, *Estelle*, 502 U.S. at 75 (noting courts' "familiar use" of evidence of prior acts to show intent, identity, motive, or plan), *see also, e.g.*, *Mejia v. Garcia*, 534 F.3d 1036, 1046 (9th Cir. 2008) (propensity evidence of prior uncharged sexual offenses did not render trial fundamentally unfair).

In an alternative argument, petitioner contends that trial counsel rendered ineffective assistance by failing to make sufficiently specific objections to the admission Hallenbeck's testimony, under either sections 352 and 1102 of the California Evidence Code, or the Sixth or Fourteenth Amendment rights to due process and a fair trial.

To demonstrate a denial of the Sixth Amendment right to the effective assistance of counsel, a petitioner must establish that counsel's performance fell below an objective standard of reasonableness, and that he suffered prejudice from the deficient performance. *Strickland v. Washington*, 466 U.S. 668, 690 (1984). Prejudice is found where there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id*.

Petitioner fails to demonstrate deficient performance by trial counsel. The prosecution included in its motion in limine argument that Hallenbeck's testimony would be relevant to prove motive and intent. (CT at 568-76.) Trial counsel did in fact object to admission of this evidence. Counsel argued in detail and at length that the evidence was highly prejudicial and low in probative value. Specifically, counsel argued that the past and present arrest circumstances were dissimilar, that there were no permissible inferences to be drawn from the evidence, and substantial prejudice would ensue. (RT at 215-26.) It appears that further or more specific objection would have been futile. "[T]he failure to take a futile action can never be deficient performance." *Rupe v. Wood*, 93 F.3d 1434, 1445 (9th Cir. 1996). No relief is available for petitioner's ineffective assistance of counsel claim.

  C. Cumulative Error

For his final claim, petitioner contends that the cumulative effect of state court errors deprived him of his right to due process. On direct review, the California Court of Appeal declined to address this claim since it found no trial court errors. *People v. Chernobieff*, *supra*, slip op. at 16 n.4.

In some cases, the combined effect of multiple trial errors may give rise to a due process violation if the trial was rendered fundamentally unfair, even where each error considered individually would not require reversal. *Parle v. Runnels*, 505 F.3d 922, 927 (9th. Cir. 2007) (citing *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974) and *Chambers v. Mississippi*, 410 U.S. 284, 290 (1973)). The fundamental question in determining whether the

combined effect of trial errors violated a defendant's due process rights is whether the errors rendered the criminal defense 'far less persuasive,' *Chambers*, 410 U.S. at 294, and thereby had a 'substantial and injurious effect or influence' on the jury's verdict. *Parle*, 505 F.3d at 927 (quoting *Brecht*, 507 U.S. at 637).

"[C]umulative-error analysis should evaluate only the effect of matters determined to be error, not the cumulative effect of non-errors." *United States v. Rivera*, 900 F.2d 1462, 1471 (9th Cir. 1990). Here, no errors are found to substantiate a claim of cumulative error.

## VI. CONCLUSION

For the foregoing reasons, IT IS HEREBY RECOMMENDED that the application for writ of habeas corpus be DENIED.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1). Within twenty-one days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served and filed within seven days after service of the objections. Failure to file objections within the specified time may waive the right to appeal the District Court's order. *Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

DATED: March 10, 2011

CHARLENE H. SORRENTINO
UNITED STATES MAGISTRATE JUDGE